# EXHIBIT C

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

CONTROLLE
DOCUMENT
NOT TO BE
DUPLICATE[
TO CDC
SAN MATEO COUNTY
PROBATION DEPARTMENT
BY____ DATE 1-19

The People of the State of California,)
                                      )
                          Plaintiff,  )
                                      )
            vs                        )
                                      )
LAMERLE RONNIE JOHNSON                )   Court Number SC31800B
DOB: June 17, 1971  (Age: 24)         )   Department Number 9
                                      )   December 19, 1995 - 8:45 a.m.
                          Defendant.  )

PROBATION OFFICER'S REPORT AND RECOMMENDATION
TO THE ABOVE-ENTITLED HONORABLE COURT

ATTORNEY FOR THE PEOPLE:   Steve Hall
ATTORNEY FOR THE DEFENSE:  Ed Pomeroy (appointed)
OFFENSE:      <u>Count 1</u> - Violation of Section 209(a) of the Penal Code
              (Felony-Kidnap for Ransom), with special allegations pursuant
              to Sections 12022.5(a) and 1203.06(a)(1) of the Penal Code;
              <u>Count 2</u> - Violation of Section 212.5(b) of the Penal Code
              (Felony-Robbery, Second Degree);
              <u>Count 3</u> - Violation of Section 245(a)(2) of the Penal Code
              (Felony-Assault With a Deadly Weapon, to Wit: Firearm), with
              special allegation pursuant to Section 12022.5 of the Penal
              Code
DATE:         July 6, 1993
ARRESTED:     July 8, 1993
CUSTODY:      In custody since arrest (894 days, plus 447 days
              good time/work time; TOTAL - 1,341 days)
GUILTY BY:    Jury verdict on November 14, 1995


R E C O M M E N D A T I O N

It is respectfully recommended that the defendant's motion for probation be
denied and he be committed to the Department of Corrections.

Pay a $200.00 restitution fine, plus a 10% collection fee, pursuant to
Section 1202.4 of the Penal Code, payable as directed.

<u>BASE TERM RANGE</u>

    209(a) PC              Life with possibility of parole
    212.5(b) PC            2 - 3 - 5 years
    245(a)(2) PC           2 - 3 - 4 years

---

☐ Court    ☐ Def. Atty.    ☐ D.A.    ☒ S.O./Commitment    ☐ File    ☐ JMO

LAMERLE RONNIE JOHNSON                                      Court Number SC31800B


ENHANCEMENTS (CHARGED AND PROVED)

    12022.5 PC                              Add 3 - 4 - 5 years to base term

CHARGE AND PLEA STATUS

| | |
|---|---|
| Original charges: | Count 1 - 209(a) PC, with special allegations per 12022.5(a) PC;<br>Count 2 - 212.5(b) PC;<br>Count 3 - 245(a)(2) PC, with special allegation per 12022.5 PC |
| Pled/Convicted: | Count 1 with 12022.5(a) PC special allegation, Count 2, and Count 3 with 12022.5 PC special allegation |
| Dismissed/Under submission: | Special allegation per 12022.5(a) PC in Count 2 found not true |
| Plea limitations: | N/A |

- - - - -

Co-defendant status:   On January 6, 1994, Ardie James Moreland II pled nolo contendere to 209(a) PC, and admitted special allegations per 1203.06 and 12022.5 PC. On February 9, 1994, he was sentenced to life in prison plus three years.

On July 25, 1994, Marlon Aaron Bonds pled nolo contendere to 207(a) PC, with special allegations per 1203.06(a)(1) and 12022.5(a) PC. On August 30, 1994, he was sentenced to serve 15 years, 4 months in state prison.

On September 9, 1994, Taryn Dante Washington pled nolo contendere to 207(a) PC, 212.5(b) PC and 245(a)(2) PC, with special allegations per 12022.5(a) and 1203.06(a)(1) PC. On January 13, 1995, he was sentenced to serve 15 years, 8 months, to be housed at CYA pursuant to 1731.5(c) WIC.

EVALUATION

This officer was unable to interview the defendant. We understand he will not be sentenced on December 19, 1995, so we plan to interview him after court and submit supplemental information before the actual sentence date.

-2-

LAMERLE RONNIE JOHNSON                                Court Number SC31800B

He is statutorily ineligible for probation. The detective who investigated this case describes the defendant as a manipulator who refuses to accept any accountability or responsibility for his actions. He also notes that the defendant displays no remorse for his actions in this kidnapping.

There are many circumstances in aggravation, under Rule 421, which apply to the defendant. This crime involved the threat of great bodily harm to the victim and a high degree of cruelty and viciousness. Others were induced by the defendant to participate in this kidnapping and the defendant clearly was in a position of leadership. This crime involved a large amount of money, $25,000, which was the ransom.

In reviewing circumstances in mitigation, under Rule 423, the defendant's prior record, consisting of a credit card offense, is the only other case for which he has been convicted. There are no other factors relating to the defendant that would mitigate his sentence.

- - - - - - - - - -

LAMERLE RONNIE JOHNSON                              Court Number SC31800B


                        S O C I A L   F A C T O R S

    (Source:    District Attorney's File)

This officer has been unable to interview the defendant, who is currently housed in San Francisco. A request has been made for a pre-sentence report from Alameda County, but to date the report has not been received.

The District Attorney's file indicates that the defendant's father is Ronald Johnson, who is currently a resident of Pacifica. The whereabouts of the defendant's mother is unknown. The defendant was raised essentially by his grandmother on Thrift Street in San Francisco. Her name is Margie L. Johnson, and she is currently 79 years old. The defendant also has a twin brother and a half brother. According to records, the defendant is married and his wife is a dispatcher for San Francisco Police Department.

PRIOR OFFENSES

Records from CII and the District Attorney's file provide the following information:

| Date | Location | Charge | Disposition |
|---|---|---|---|
| 12/7/90 | PD Oakland | 496.1 PC (Rcvg.Stln.Prop.) | 2/5/91: Crt.#343980; conv.of 484e(3) PC (Grand Theft of Access Card), red.to misd.per 17 PC; 2 yrs.prob.; 2 ds.CJ |

PRESENT OFFENSE

Records of the Daly City Police Department provide the following information:

On July 6, 1993, Ellis Foots, approximately 27 years old, was kidnapped by Mr. Johnson, Mr. Moreland and Mr. Washington. One of these men was in possession of a gun. A witness later identified Mr. Johnson as the person in possession of a pistol.

On July 7, 1993, the Daly City Police Department received a call from San Leandro police. The San Leandro Police Department had been contacted by the victim's sister. She said that people who were unknown to her were planning to attempt to remove items from Mr. Foots' safety deposit box. The San Francisco Police Department subsequently contacted Daly City police. Information was related that a man in San Francisco received a phone call from unknown people who said they had the victim and they requested $35,000. Daly City police joined the San Francisco police

LAMERLE RONNIE JOHNSON                                Court Number SC31800B

officers at the Oakland residence where the ransom call had been made.  On July 7, 1993, the victim called the same location and said, "I've been kidnapped...I'm somewhere in Oakland and they want 35 G's, do whatever you have to, just get the money."

By July 8, 1993, the victim's mother had raised approximately $25,000 cash. This money was turned over to one of the Daly City police detectives.  The victim was in possession of a cellular phone when he was kidnapped and it was used several times after the incident.  During investigation, it was learned that the cellular phone had been used in Oakland.

Through further communication with the same person in San Francisco, the kidnappers gave him directions to a location in Oakland where the money was to be dropped off.  They agreed that after the money was received, the victim would be taken to a prearranged location.

In the meantime, the victim's sister received a telephone call from the Los Angeles Police Department informing her that Mr. Moreland had attempted to purchase merchandise with the victim's credit cards.  They had taken Mr. Moreland into custody.

During questioning, Mr. Moreland admitted being involved in the kidnapping of Mr. Foots.  He gave Los Angeles police directions to where the victim was being held in Oakland.  At that time, San Francisco police and Daly City police prepared to enter the apartment where the victim was being held in Oakland.  Once inside, police officers found the victim in the living room with his eyes blindfolded with duct tape, his hands handcuffed in front of him, and his feet tied with rope.  At this time, Mr. Johnson, Mr. Washington and Mr. Bonds were located inside the apartment and arrested.

The money that had been supplied to the kidnappers was found in the apartment.  Counterfeit money, in the amount of $520, was also found.  Two loaded guns were found in the apartment, along with a third gun found in Mr. Bonds' car.

During an interview with the victim, he said that when he left a friend's house in Daly City, he was ordered down to the ground by three of the defendants who identified themselves as San Francisco police officers. They claimed to have a warrant for his arrest.  After he realized that they, in fact, were not police officers, they removed $20 or $30 cash from his wallet and all of his credit cards.  The victim said that after he was taken to the apartment in Oakland, one of the defendants told him that two of them were, in fact, police officers.  They said that if the money was not supplied, "nobody will ever find you."

As were the other defendants, Mr. Washington was interviewed by Daly City police.  He said he was contacted by Mr. Johnson who asked for his help with something.  He met Mr. Johnson at a fast food restaurant in San

LAMERLE RONNIE JOHNSON                          Court Number SC31800B

Francisco. They drove away in Mr. Johnson's vehicle. Mr. Johnson explained that he was going to go pick up someone who owed him money. When they arrived in Daly City, another car was already parked in the same area. Mr. Moreland and another unidentified individual were in that car. As three people exited, Mr. Johnson pointed out the person in whom he was interested. Mr. Washington saw Mr. Johnson, Mr. Moreland and the unidentified person run toward the victim and force him to the ground. Before this happened, he saw the victim throw a bag over a fence. Mr. Washington climbed up the fence and began looking for the bag in a back yard. Mr. Johnson told him to come back to the other side of the fence. He saw that the victim was in the back seat of the car in which he and Mr. Johnson had driven to the area. However, at this point, Mr. Moreland was driving. He told Mr. Washington to get into the car, as well. Mr. Moreland drove the three of them to Mr. Bonds' apartment in Oakland. He said that prior to traveling to Oakland, he saw that the victim had been handcuffed, but he did not know who did it or when. He said that when Mr. Bonds arrived home, he did not seem particularly surprised or concerned to see the victim sitting on the couch handcuffed. Mr. Bonds then put duct tape over the victim's eyes.

Mr. Washington said that he left the Oakland apartment and was driven to his home in San Francisco by Mr. Moreland. At about 11:00 the next morning, Mr. Johnson called him and told him to come back to Oakland. He complied with Mr. Johnson's request. Mr. Johnson told him that he (Mr. Johnson) and Mr. Moreland were going to go to Los Angeles. While they were gone, Mr. Washington received phone calls from Mr. Johnson. He was told what to say when he called the victim's friend for ransom money.

When Mr. Washington was questioned about any harm that was inflicted upon the victim, he said that one time Mr. Moreland used a stun gun on the victim. When questioned why he involved himself in this incident, he said that he was "getting greedy." He never thought any harm was going to be done to the victim. He admitted knowing what he was doing was wrong, but said that he was not aware of the seriousness of his actions. He said that he was the person who was primarily responsible for the care and treatment of the victim.

The investigation further revealed that at 9:59 p.m., after the kidnapping, on July 6, 1993, a Daly City police officer responded to a disturbance call of a man with a gun. He saw Mr. Johnson walking in the opposite direction, a block away, and appearing nervous. The officer stopped to talk to Mr. Johnson, who became very hostile. He was eventually arrested for 148 of the Penal Code and booked into the county jail. He was released on July 7, 1993, at 1:51 a.m.

During the course of the investigation, it was learned that when Mr. Bonds returned to his apartment, and the group did not know what had happened to Mr. Johnson, there was talk of killing the victim. A time table was set at about 12:15 a.m. to kill him. They drove to the Oakland hills and found a

-6-

LAMERLE RONNIE JOHNSON                                    Court Number SC31800B

spot off Highway 13 that could be used to dump the body. However, they received a page that informed them that Mr. Johnson was to be released from custody.

Records indicate that Mr. Johnson stated he had been having trouble with the victim over a woman that Mr. Johnson was dating. He claimed that on July 5, 1993, the victim had drawn a gun on him. He did not report this incident to the police. Mr. Johnson told detectives initially that he was in charge of kidnapping the victim and it was not until they had kidnapped him that he decided to demand some money for his release. However, Mr. Johnson testified that there was no plan to rob or kidnap the victim, that he was going "swoop this guy's butt." During questioning by the police, Mr. Johnson also denied going to Los Angeles, and would not give the police any further information, telling them, "We would have to find out ourselves."

DEFENDANT'S STATEMENT CONCERNING THE PRESENT OFFENSE

None submitted.

VICTIM IMPACT STATEMENT

The victim, according to the District Attorney, does not wish to make a statement.

RESTITUTION

No restitution is requested by the victim.

INTERESTED PARTIES

One of the investigating detectives describes the defendant as a total manipulator, who in this case has placed the blame everywhere he can. He states the defendant has been in complete denial and rejection of any of his actions. He said initially the defendant admitted the kidnapping, but rationalized his behavior. He notes that the defendant now refuses to accept any accountability or responsibility for his actions. He also states the defendant displays no remorse for what he did.

MISCELLANEOUS

Department of Motor Vehicles records indicate the defendant was issued a license on June 11, 1990. He has a Class C license that has been suspended or revoked. It was suspended on September 17, 1993, for failure to appear.

LAMERLE RONNIE JOHNSON                                Court Number SC31800B

The defendant has a speeding conviction in 1992, and a similar conviction in 1993. In June 1993, he was convicted of unlicensed driver. He has one failure to appear in May 1993 for failing to stop. There are no accidents listed on his record.

                                        Respectfully submitted,

                                        GENE A. ROH
                                        CHIEF PROBATION OFFICER

Approved,                               By_____
                                            TIMOTHY E. GATTO
                                            Deputy Probation Officer
By_____
    JOHN M. O'CONNOR
    Supervising Probation Officer

TEG:srh
#94023

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

The People of the State of California,)
)
Plaintiff,)
)
vs )
)
LAMERLE RONNIE JOHNSON )  Court Number SC31800B
DOB:    June 17, 1971   (AGE: 24) )  Department Number 9
) January 18, 1995 - 8:45 a.m.
Defendant.)

CONTROLLED DOCUMENT NOT TO BE DUPLICATED

TO CDC
SAN MATEO COUNTY PROBATION DEPARTMENT
BY___ DATE 1-19-

ADDENDUM TO PROBATION OFFICER'S REPORT AND RECOMMENDATION
TO THE ABOVE-ENTITLED HONORABLE COURT

Following the defendant's last court appearance, and prior to his transfer back to San Francisco, this officer obtained the following information for the Social Factors section of this report.

S O C I A L   F A C T O R S

(Source:   Defendant's Statement; Probation Records)

FAMILY BACKGROUND

The defendant reports his father is Ronald Johnson, age 43, who resides in Pacifica. His mother is Mattie Johnson, age 41, and a resident of Richmond, California. The defendant has a twin brother, Lamont, who resides with their mother in Richmond. He has two younger brothers, age 21 and 9, and a younger sister, age 17. He also has a half sister, age 21, from his mother.

The defendant was raised in Richmond and San Francisco. He was age 1 when his parents divorced. He remained primarily with his mother. Both of his parents remarried. His father is still married to the same woman. His mother remarried Paul Johnson and subsequently divorced him.

In his early years, the defendant cites a physical abuse problem. His mother was the one who abused him and it happened frequently. He notes that he learned to lie and survive, being raised in an environment with abuse. He stayed with his mother until age 16 at which time he moved in with his father.

☐ Court     ☐ Def. Atty.     ☐ D.A.     ☒ S.O./Commitment     ☐ File     ☐ JMO

LAMERLE RONNIE JOHNSON                                    COURT NUMBER SC31800B


The defendant reports his juvenile problems extended to the law, and he was sent to the juvenile hall in Richmond for an auto theft.

EDUCATION

The subject reports he attended high school in San Francisco through the eleventh grade. In 1989, he earned his G.E.D. He notes that he was suspended in junior high for fighting, but overall maintained a 2.5 grade point average. He played football and basketball in school.

Through the Omega Boys Club, the defendant received a scholarship to Brown University in Atlanta, Georgia. He was a communications major, with intentions of entering broadcasting. He was in college until 1991.

EMPLOYMENT

The defendant worked in the food service industry commencing at age 17. He also worked for a San Francisco television station, and in group homes as a counselor.

MARITAL

On December 31, 1993, while in custody, the subject married Dana McGee, date of birth October 23, 1967. He knew his wife three years prior to their marriage. The couple was married in the San Mateo County Jail. He reports that his wife has been very supportive of him throughout his incarceration. She is currently employed as a dispatcher for the San Francisco Police Department.

MILITARY

The subject reports he enlisted in the United States Navy two weeks prior to his arrest in the instant offense.

HEALTH

The subject describes himself as being physically in good health. He reports he has suffered from no serious illnesses or injuries.

SUBSTANCE ABUSE/TREATMENT HISTORY

The subject began using alcohol at age 15. He states he is only a social drinker, consuming alcohol on an occasional basis. He denies the use of any marijuana, or any other drugs.

The defendant commenced mental health treatment at age 15. He was involved in therapy to help him deal with his abuse at the hands of his mother. Since being in custody, he states his mental health has been "up and down."

LAMERLE RONNIE JOHNSON                                    COURT NUMBER SC31800B

He reports that he is under a lot of stress and wonders if he is going to get killed in prison.

DEFENDANT'S STATEMENT CONCERNING THE PRESENT OFFENSE

The defendant discussed the present offense with this officer and reports that he feels "bad." He states "this shouldn't have happened. As far as the victim, I'm remorseful." He states that "sometimes you get caught up, it snowballed, it happened, it was messed up." In conclusion, the defendant states, "I honestly don't feel it is not worth a life sentence."

                                        Respectfully submitted,

                                        GENE A. ROH
                                        CHIEF PROBATION OFFICER


Approved,                               By_____
                                           TIMOTHY E. GATTO
                                           Deputy Probation Officer

By_____
   JOHN M. O'CONNOR
   Supervising Probation Officer


TEG:jrq
#94024