Case 3:07-cv-02921-JSW    Document 10-5    Filed 03/05/2008    Page 1 of 5

# EXHIBIT D

LIFE PRISONER EVALUATION
INITIAL PAROLE CONSIDERATION HEARING
NOVEMBER 2005 CALENDAR

**JOHNSON, LAMERLE        J-92682**

I.   COMMITMENT FACTORS:

   A. Life Crime:

   Lamerle R. Johnson was received into CDC on 01/26/96 subsequent to a conviction by jury for Assault with a Deadly Weapon (Firearm) and Kidnapping. He was sentenced to Life plus 11 years on San Mateo County case number 3C31800-B. The victim was 27 year old Ellis Foots. The prisoner's current MEPD is 12/15/06 and his Life term commenced on 12/12/99.

   1. Offense Summary:

   On July 3, 1993 Ellis foots was kidnapped by defendant's Johnson, Ardie Moreland, Marlon Bonds and Taryn Washington. A witness identified Johnson as the person in possession of a firearm.

   On July 7, 1993 the Daly City Police Department received a call from the San Leandro Police. San Leandro received a call from the victim's sister. She stated that people, unknown to her, were planning to remove items from the victim's safety deposit box. The police later learned that a man (unidentified) had received a call from unknown people claiming they had the victim and requested $35,000.00. Police later learned the victim called confirming he was being held for $35,000.00 ransom and asked, "do whatever they want".

   By July 8, 1993, the victim's mother had raised approximately $25,000.00 and police detectives made the money drop as directed.

   During this time, one of the defendants had used the victim's credit card on a shopping spree in Los Angeles. Defendant Moreland was taken into custody and upon questioning admitted to his involvement in the kidnapping. He provided information to police that led to the arrest of the other kidnappers and rescue of the victim.

   Police investigation received contradictory information by all the defendants. It appeared that the initial event may have been a combination of a robbery and revenge scheme and then became a kidnap for ransom. It does appear that Johnson certainly had a lead role in this crime.

   (Source document: San Mateo County Probation Officer's Report (POR) dated 01/19/96; refer to pages 4 through 7)

1

2. <u>Prisoner's Version</u>:

He does not dispute that his life crime transpired nor does he dispute that he was involved. He has accepted that he messed-up and he is now paying the price for his mistakes. He had nothing further to add.

3. <u>Aggravating/Mitigating Circumstances</u>:

a. <u>Aggravating Circumstances</u>:

This crime involved the threat of great bodily harm to the victim and a high degree of cruelty and viciousness. Others were enticed by the defendant to participate in this kidnapping and the defendant clearly was in a position of leadership. This crime involved a large ransom in the amount of $25,000.00.

b. <u>Mitigating Circumstances</u>:

The defendant's prior record was minor and consisted of credit card offenses.

(Source document: POR page 3)

B. <u>Multiple Crime(s)</u>:

Not applicable.

II. **PRE-CONVICTION FACTORS**:

A. <u>Juvenile Record</u>:

Auto Theft, date unknown, adjudicated locally with incarceration in Juvenile Hall. (POR page 2)

B. <u>Adult Conviction & Arrests</u>:

There is one arrest and conviction on 12/07/90 by Oakland Police Dept. for PC 496.1 Receiving Stolen Property (Grand Theft of Access Card). He received a 2 years misdemeanor probation. (POR page 4)

C. <u>Personal Factors</u>:

Lamerle Ronnie Johnson, born 06/17/71 to the union of Ronald Johnson and Mattie Johnson. His parents divorced when the defendant was one year old. The defendant was raised in Richmond and San Francisco, primarily with his mother in Richmond. The defendant cited years of abuse from his mother. He stayed with his mother until age 16 when he moved in with his father. The defendant attended high school in Richmond and San Francisco through the 11th grade. In 1989, he obtained a G.E.D. He attended college on a sport's scholarship to Brown University in Atlanta, Georgia until 1991. The defendant reported working at a San Francisco television station and at group homes as a counselor. While in custody in the San Mateo jail, he married Dana McGee on 12/31/93. He reported some alcohol use at age 15 but denied the use of any illegal drugs. The inmate divorced Dana McGee in September of 1996. He

also reported at age 15, he entered into mental health treatment due to the abuse at the hands of his mother. He stated his mental health status as "up and down" but otherwise describe himself as being physically in good health. (POR pages 1, 2, & 3)

III. POST-CONVICTION FACTORS:

A. Special Programming/Accommodations:

None.

B. Custody History:

He was received into CDC on 01/26/96 at San Quentin Reception Center (SQ-RC) for reception center processing. His classification score was calculated at 69, level IV. He was received at High Desert State Prison-IV (HDSP) on 03/11/96 for level-IV general population (GP). On 12/06/96, he appeared before for UCC for a special program review. Due to enemy concerns at HDSP, he was referred to the CSR for transfer. On 01/28/97, he was received at Corcoran State Prison (COR) for level IV GP. On 03/02/98, he was placed in to Administrative Segregation (Ad/Seg) due to being a victim of a slashing assault. He was referred to the CSR for transfer consideration. On 07/16/98, he was received at Sacramento State Prison-IV (SAC) for GP housing. On 07/24/98, he was placed into Ad/Seg due to safety concerns. He was referred to the CSR for transfer. On 10/29/98, he was received at Substance Abuse Treatment Facility (SATF) for level IV sensitive needs yard (SNY) placement. On 03/13/00 at an annual classification review, he was referred for transfer to the CSR for level III SNY housing. On 05/25/00, he was received at Mule Creek State Prison-III (MCSP) for SNY housing on Facility "B". On 06/07/01, he was placed into Ad/Seg due to a mutual combat. He was released back to Facility "B" by ICC. On 01/09/05, he was transferred from Facility "B" to Facility "C" for SNY housing. (for additional details refer to the current and prior Post-Conviction Progress Reports)

C. Therapy and Self Help Activities:

Since his arrival at MCSP, he has participated in self-help and therapy programs. Most recently he has participated in Criminal Gangs Anonymous. On 08/31/98 Johnson completed a paralegal certification correspondence course. (refer to Post-Conviction Progress Reports)

D. Disciplinary History:

He has received only (1) serious CDC 115 dated 06/07/01 for Mutual Combat. There are (2) CDC 128A's Counseling Chronos noted.

E. Other:

None.

IV. **FUTURE PLANS**:

A. <u>Residence</u>:

He does not have any firm residence plans at this time. He tentatively has a possible residence with a half-brother in Visalia, CA. He stated this might be resolved by the time of his BPH hearing. He did state that he did not have any residence plans in San Mateo County and for other reasons, did not believe he could successfully parole there.

B. <u>Employment</u>:

No firm plans at this time.

C. <u>Assessment</u>:

His current future plans are incomplete and cannot be assessed. He stated a very long and detailed story about why he cannot parole to San Mateo. In essence he stated his problems in the San Mateo County Jail stemmed from his cooperation in a murder trial that ultimately did not result in a conviction. He says he fears the San Mateo County District Attorney's Office and the Sheriff's Department in that county. I cannot make a qualified judgement on his concerns. However, he does not appear to have any family ties or any history in San Mateo County other then the commitment offense. Therefore, in light of this, I would recommend a parole residence outside of San Mateo County if he were granted a release date by the BPH.

V. **USINS STATUS**:

Not Applicable

VI. **SUMMARY**:

A. Prior to release the prisoner needs to develop some realistic residence and employment plans. He should continue his participation in self-help and therapy. He should remain disciplinary free.

B. This report is based on an interview with the prisoner on two separate occasions lasting approximately 2 hours (07/20/05 and 08/19/05) and a complete review of the central file.

C. He will be afforded an opportunity to examine his central file prior to his hearing.

D. No accommodation was required per the Armstrong vs. Davis BPT Parole Proceedings Remedial Plan for effective communication.

Prepared by:                                    Reviewed by:

*B. Heise* (signature)                          *L. Warren* (signature)

B. Heise                                        L. Warren
Correctional Counselor I                        Correctional Counselor II
Facility                                        Facility

4